# THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|   |   |
|---|---|
| UNITED STATES OF AMERICA<br>United States Department of Justice, Antitrust Division<br>600 E Street, NW, Suite 9500<br>Washington, D.C. 20530,<br><br>　　　　　Plaintiff,<br><br>　　　　　v.<br><br>CENGAGE LEARNING HOLDINGS I, L.P.,<br>CENGAGE LEARNING HOLDINGS II L.P.,<br>CENGAGE LEARNING, INC.,<br>APAX/TL HOLDINGS, LLC,<br>EDUCATION MEDIA AND PUBLISHING<br>　　GROUP LIMITED, and<br>HOUGHTON MIFFLIN HARCOURT<br>　　PUBLISHING COMPANY,<br><br>　　　　　Defendants. | CASE NO.:<br><br>JUDGE:<br><br>Case: 1:08-cv-00899<br>Assigned To : Bates, John D.<br>Assign. Date : 5/28/2008<br>Description: Antitrust |

## COMPLAINT

The United States of America, acting under the direction of the Attorney General of the United States, brings this civil antitrust action to enjoin the proposed acquisition by Cengage Learning, Inc. and related entities (collectively "Cengage"), of the assets of the Houghton Mifflin College Division ("HM College") from Houghton Mifflin Harcourt Publishing Company and a related entity (collectively "Houghton Mifflin"), and to obtain equitable and other relief. The United States complains and alleges as follows:

### I. NATURE OF THE ACTION

1.　On or about November 30, 2007, Cengage and Houghton Mifflin entered into an agreement for Cengage to acquire the assets of HM College for approximately $750 million.

2.　Cengage and HM College publish textbooks and other educational materials and

are direct competitors in the development, publication, and sale of textbooks and ancillary print and electronic (including Internet-based) educational materials (collectively "textbooks and ancillary materials") used in numerous courses taught at higher education institutions throughout the United States. For the courses listed in Appendix A of this Complaint (hereinafter "the Overlap Courses"), Cengage and HM College publish textbooks and ancillary materials that compete head-to-head with each other and are close substitutes.

3. The markets for textbooks and ancillary materials used in the Overlap Courses are highly concentrated and have high barriers to entry. Cengage's proposed acquisition of the assets of HM College would eliminate competition between Cengage and HM College in these markets.

4. The United States brings this action to prevent Cengage's proposed acquisition of the assets of HM College because it is likely to substantially lessen competition in the development, publication, and sale of textbooks and ancillary materials used in the Overlap Courses in violation of Section 7 of the Clayton Act, 15 U.S.C. § 18.

## II. PARTIES TO THE PROPOSED ACQUISITION

5. Cengage Learning, Inc. is a Delaware corporation with its headquarters in Stamford, Connecticut. Cengage Learning Holdings I, L.P., a limited partnership with its headquarters in Stamford, Connecticut, is the ultimate parent entity of Cengage Learning, Inc. Cengage Learning Holdings II L.P., a limited partnership with its headquarters in Stamford Connecticut, is an intermediate entity between Cengage Learning Holdings I, L.P. and Cengage Learning, Inc. Apax/TL Holdings, LLC, a Delaware limited liability company, is the general partner in Cengage Learning Holdings I, L.P. The above entities (collectively "Cengage") develop, publish, and sell textbooks and ancillary materials for use in the United States and elsewhere. Cengage is the second largest publisher of textbooks and ancillary materials used in

courses taught at higher education institutions in the United States and ranks among the top three sellers of such textbooks and materials for each of the Overlap Courses. Cengage had total revenues of about $1.7 billion in the twelve-month period ending September 30, 2007, including about $1 billion in revenues from the sale of higher education textbooks and ancillary materials.

6. Houghton Mifflin Harcourt Publishing Company (formerly Houghton Mifflin Company) is a Massachusetts corporation with its headquarters in Boston, Massachusetts. Education Media and Publishing Group Limited, a Cayman Islands corporation with its headquarters in Dublin, Ireland, is the ultimate parent entity of Houghton Mifflin Harcourt Publishing Company. The above entities (collectively "Houghton Mifflin") develop, publish, and sell textbooks and ancillary materials for use in the United States and elsewhere. Houghton Mifflin's HM College Division is the fifth largest publisher of textbooks and ancillary materials used in courses taught at higher education institutions in the United States and ranks among the top three sellers of such textbooks and materials for each of the Overlap Courses. Houghton Mifflin has total annual revenues of about $2.5 billion, and estimated 2007 revenues of about $230 million from the sale of textbooks and ancillary materials by HM College.

### III. JURISDICTION AND VENUE

7. The United States brings this action under Section 15 of the Clayton Act, as amended, 15 U.S.C. § 25, to prevent and restrain the Defendants from violating Section 7 of the Clayton Act, 15 U.S.C. § 18.

8. Defendants' activities in developing, publishing, and selling textbooks and ancillary materials for use in the Overlap Courses are in the flow of and substantially affect interstate trade and commerce. This Court has subject matter jurisdiction over this action

pursuant to Section 12 of the Clayton Act, 15 U.S.C. § 22, and 28 U.S.C. §§ 1331, 1337(a), and 1345.

9. Defendants sell higher education textbooks and ancillary materials in, and have consented to venue and personal jurisdiction in, this judicial district. Venue is proper under 15 U.S.C. § 22 and 28 U.S.C. § 1391(d).

### IV. TRADE AND COMMERCE

#### A. Relevant Product Markets for Textbooks and Ancillary Materials

10. Publishers market and sell textbooks and ancillary materials for use in courses taught at higher education institutions. In most cases, instructors select the textbooks and ancillary materials that will be used for their courses, and students buy the selected textbooks and ancillary materials.

11. Textbooks are often supplemented with ancillary educational materials, such as teacher's editions, audio-visual teaching tools, Internet content, CD-ROMs, workbooks, and study guides. These materials are often offered by publishers for free or as part of a discounted package to induce instructors to select a particular textbook and to induce students to purchase the publisher's textbooks and ancillary materials.

12. Textbooks and ancillary materials are used as the primary teaching materials in each of the Overlap Courses. Textbooks provide the core written material for the Overlap Courses and serve as the foundation for instructors' overall lesson plans. While instructors could use alternative teaching materials (such as copies of lecture notes and articles), they generally select textbooks to serve as the primary teaching materials for their courses because accessing and creating alternative teaching materials is often a more time-consuming, costly, and inefficient method of delivering high quality content to their students. Instructors using textbooks and

ancillary materials would not turn to any alternative teaching materials in sufficient numbers to defeat a small but significant increase in the price of any textbooks and ancillary materials for the Overlap Courses, or a small but significant decrease in the quality of such textbooks and other materials.

13. Students taking the Overlap Courses are unlikely to have any significant alternatives to purchasing new textbooks for these courses. Although used textbooks, if available, can sometimes serve as alternatives for new textbooks, used textbooks are not uniformly available in large numbers. Moreover, instructors often require students to use the newest textbook editions. Publishers generally revise textbooks every three to four years and revised textbooks often differ substantially from their prior edition, limiting the extent to which used textbooks may be substituted for new editions of the same textbooks. Students would not turn to purchasing used textbooks in sufficient numbers to defeat a small but significant increase in the price of a new edition of the textbooks.

14. Each Overlap Course is a separate course focused on a different subject and therefore requires instructors and students in the course to use the textbooks and ancillary materials that have been developed for that course. For each Overlap Course, the textbooks and ancillary materials for that course constitute a separate relevant product market and a line of commerce pursuant to Section 7 of the Clayton Act.

B. **The Relevant Geographic Market**

15. Defendants market and sell textbooks and ancillary materials for use in courses taught at higher education institutions throughout the United States. Market participants for each relevant product market alleged herein are those publishers from which instructors select textbooks and ancillary materials for use as primary teaching materials in their courses. A

hypothetical monopolist of the textbooks and ancillary materials sold for use in any Overlap Course in the United States could profitably lower the rate of quality improvements in and/or increase the price of such textbooks and ancillary materials in the United States. For each relevant product market alleged herein, the United States constitutes a relevant geographic market pursuant to Section 7 of the Clayton Act.

      C.    **<u>Anticompetitive Effects: Loss of Price and Product Quality Competition</u>**

16.    In each relevant product and geographic market alleged herein, Cengage and HM College offer leading textbooks and ancillary materials that are close substitutes for a significant number of customers in that market. In each such market, Cengage and HM College are among the few firms with a significant presence that compete to provide textbooks and ancillary materials and consistently account for at least 35 percent of all sales. Using a standard concentration measure called the Herfindahl-Hirschman Index (or "HHI," defined and explained in Appendix B), the proposed acquisition would substantially raise market concentration in highly concentrated markets, increasing the HHI by more than 500 and producing a post-merger HHI in excess of 3000 in each relevant market.

17.    Cengage and HM College compete head-to-head to be selected by instructors to provide textbooks and ancillary materials for each Overlap Course in the United States. This competition has provided significant incentives for each to publish new titles and improve product quality and has disciplined pricing decisions. The proposed acquisition would eliminate this competition in each relevant market, increasing the likelihood that Cengage will unilaterally increase prices or reduce its investment or other efforts to develop new or improved textbooks and ancillary materials.

18.   The proposed acquisition is likely to substantially lessen competition in the development, publication, and sale of textbooks and ancillary materials in each of the relevant markets, in violation of Section 7 of the Clayton Act.

**D.   Entry: New Entrants Will Not Defeat an Exercise of Market Power**

19.   In each relevant product and geographic market alleged herein, there is unlikely to be timely entry by any firm that would be sufficient to defeat the likely anticompetitive effects of the proposed acquisition. Successful entry into developing, publishing, and selling textbooks and ancillary materials in each of the relevant markets is difficult, time-consuming, and costly.

20.   Successful entry generally can be achieved only over many years and after at least one or more textbook revision cycles. Significant investment and effort are required to assemble authors, editorial staff, and reviewing professors, to develop and obtain licenses to copyrighted content and ancillary educational materials, and to train a knowledgeable sales force. The outcome of such effort would be highly uncertain because, among other things, the reputation of a successful incumbent textbook is difficult for a publisher of a new textbook to challenge. The leading textbooks in each relevant market have been published for some time and are well-known to instructors. Most instructors switch textbooks infrequently because they develop course syllabi, lesson plans, homework, tests, and other materials that conform to the textbooks they use, and changing textbooks usually requires modifications to course syllabi and other materials.

## V. VIOLATIONS ALLEGED

21.   The United States incorporates the allegations of paragraphs 1 through 20 above.

22. The proposed acquisition of HM College by Cengage would substantially lessen competition in interstate trade and commerce in violation of Section 7 of the Clayton Act, 15 U.S.C. § 18.

23. Unless restrained, the acquisition would likely have the following anticompetitive effects, among others:

    a. actual and future competition between Cengage and Houghton Mifflin in the development, publication, and sale of textbooks and ancillary materials in each relevant product and geographic market alleged herein will be eliminated;

    b. competition in the development, publication, and sale of textbooks and ancillary materials in each relevant market will be substantially lessened; and

    c. the rate of quality improvements in the textbooks and ancillary materials in each relevant market likely will decline and/or prices for such textbooks and ancillary materials likely will increase.

## VI. REQUEST FOR RELIEF

24. The United States requests that this Court:

    a. adjudge and decree the proposed acquisition to violate Section 7 of the Clayton Act, 15 U.S.C. § 18;

b.  enjoin and restrain the Defendants and all persons acting on their behalf from consummating the proposed acquisition or from entering into or carrying out any contract, agreement, plan, or understanding, the effect of which would be to combine HM College with the operations of Cengage;

c.  award the United States its costs for this action; and

d.  grant the United States such other and further relief as the Court deems just and proper.

Respectfully submitted,

FOR PLAINTIFF UNITED STATES OF AMERICA:

*/s/ Thomas O. Barnett*
Thomas O. Barnett (D.C. Bar #426840)
Assistant Attorney General

*/s/ David L. Meyer*
David L. Meyer (D.C. Bar #414420)
Deputy Assistant Attorney General

*/s/ Patricia A. Brink*
Patricia A. Brink
Deputy Director of Operations

*/s/ James J. Tierney*
James J. Tierney (D.C. Bar #434610)
Chief, Networks & Technology
Enforcement Section

*/s/ Scott A. Scheele*
Scott A. Scheele (D.C. Bar #429061)
Assistant Chief, Networks & Technology
Enforcement Section

*/s/ Janet J. Brody*
Janet J. Brody
Justine K. Donahue (D.C. Bar #476255)
Aaron Comenetz (D.C. Bar #479572)
John C. Filippini (D.C. Bar #165159)
Kent Brown
Aaron Brodsky
Attorneys, Networks & Technology
Enforcement Section

Antitrust Division
United States Department of Justice
600 E Street, N.W., Suite 9500
Washington, D.C. 20530
(202) 307-6200

Dated: May 28, 2008

# APPENDIX A

**Overlap Courses**

Business: Introductory

Foreign Languages and Literature: French: Language: Business French

Foreign Languages and Literature: French: Language: Intermediate

Foreign Languages and Literature: German: Language: Grammar

Foreign Languages and Literature: Italian: Language: Elementary

Foreign Languages and Literature: Italian: Language: Intermediate

History: Western Civilization Survey: 1500 to Present

History: Western Civilization Survey: 1750 to Present

History: Western Civilization Survey: Prehistory to 1715

History: Western Civilization Survey: Prehistory to Present

History: World History Survey: 1400 to 1750

History: World History Survey: 1500 to Present

History: World History Survey: Prehistory to Present

Interdisciplinary Studies: Orientation to College

**APPENDIX B**

**Herfindahl-Hirschman Index**

"HHI" means the Herfindahl-Hirschman Index, a commonly accepted measure of market concentration. It is calculated by squaring the market share of each firm competing in the market and then summing the resulting numbers. For example, for a market consisting of four firms with shares of 30%, 30%, 20%, and 20%, the HHI is 2600 ($30^2 + 30^2 + 20^2 + 20^2 = 2600$). The HHI takes into account the relative size distribution of the firms in a market and approaches zero when a market consists of a large number of small firms. The HHI increases both as the number of firms in the market decreases and as the disparity in size between those firms increases.

Markets in which the HHI is between 1000 and 1800 points are considered to be moderately concentrated, and those in which the HHI is in excess of 1800 points are considered to be highly concentrated. *See Horizontal Merger Guidelines* ¶ 1.51 (revised Apr. 8, 1997). Transactions that increase the HHI by more than 100 points in concentrated markets presumptively raise antitrust concerns under the guidelines issued by the U.S. Department of Justice and Federal Trade Commission. *See id.*

JS-44
(Rev.1/05 DC)

# CIVIL COVER SHEET

## I (a) PLAINTIFFS

United States of America
U.S. Department of Justice, Antitrust Division
600 E Street, NW, Suite 9500
Washington, DC 20530

## DEFENDANTS

Cengage Learning Holdings I, L.P., Education Media and Publishing Group Limited, et al.

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF _____
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT  88888
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Janet J. Brody, Esq.
U.S. Department of Justice, Antitrust Division
600 E Street, NW, Suite 9500
Washington, DC 20530
(202) 307-6200

ATTORNEYS (IF KNOWN)

Case: 1:08-cv-00899
Assigned To : Bates, John D.
Assign. Date : 5/28/2008
Description: Antitrust

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

⦿ 1 U.S. Government Plaintiff
○ 2 U.S. Government Defendant
○ 3 Federal Question (U.S. Government Not a Party)
○ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

### ⦿ A. Antitrust
[X] 410 Antitrust

### ○ B. Personal Injury/Malpractice
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

### ○ C. Administrative Agency Review
☐ 151 Medicare Act

Social Security:
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)
Other Statutes
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

### ○ D. Temporary Restraining Order/Preliminary Injunction

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

### ○ E. General Civil (Other)        OR        ○ F. Pro Se General Civil

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ○ G. *Habeas Corpus/ 2255* | ○ h. *Employment Discrimination* | ○ I. *FOIA/PRIVACY ACT* | ○ J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ○ K. *Labor/ERISA (non-employment)* | ○ L. *Other Civil Rights (non-employment)* | ○ M. *Contract* | ○ N. *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**
- ● 1 Original Proceeding
- ○ 2 Removed from State Court
- ○ 3 Remanded from Appellate Court
- ○ 4 Reinstated or Reopened
- ○ 5 Transferred from another district (specify)
- ○ 6 Multi district Litigation
- ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)
Civil Antitrust action to enjoin acquisition pursuant to Section 7 of the Clayton Act, 15 U.S.C. § 18.

**VII. REQUESTED IN COMPLAINT** ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23    DEMAND $ _____    Check YES only if demanded in complaint
JURY DEMAND: YES ☐   NO ☒

**VIII. RELATED CASE(S) IF ANY** (See instruction) YES ☐   NO ☒   If yes, please complete related case form.

DATE May 28, 2008    SIGNATURE OF ATTORNEY OF RECORD _/s/ James Brody_

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The **JS-44** civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.    COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.   CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed <u>only</u> if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.   CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the <u>primary</u> cause of action found in your complaint. You may select only <u>one</u> category. You <u>must</u> also select <u>one</u> corresponding nature of suit found under the category of case.

VI.   CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.  RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.