## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Plaintiff, | ) | CASE NO.: |
| | ) | |
| v. | ) | JUDGE: |
| | ) | |
| CENGAGE LEARNING HOLDINGS I, L.P., | ) | |
| CENGAGE LEARNING HOLDINGS II L.P., | ) | Case: 1:08-cv-00899 |
| CENGAGE LEARNING, INC., | ) | Assigned To : Bates, John D. |
| APAX/TL HOLDINGS, LLC, | ) | Assign. Date : 5/28/2008 |
| EDUCATION MEDIA AND PUBLISHING | ) | Description: Antitrust |
|     GROUP LIMITED, and | ) | |
| HOUGHTON MIFFLIN HARCOURT | ) | |
|     PUBLISHING COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

### PLAINTIFF UNITED STATES' EXPLANATION OF
### CONSENT DECREE PROCEDURES

Plaintiff United States of America submits this memorandum summarizing the

procedures for entry of the proposed Final Judgment as set forth by the Antitrust Procedures and

Penalties Act, 15 U.S.C. §§ 16(b)-(h) (the "APPA"), which applies in civil antitrust cases

brought and settled by the United States. As described below, the APPA provides that certain

events must occur prior to the Court signing and entering the proposed Final Judgment to resolve

this case.

1.     Today, Plaintiff has filed a Complaint, proposed Final Judgment, Competitive

Impact Statement, and Asset Preservation Stipulation and Order ("APSO"). All of the parties

have agreed to the APSO, and unlike the proposed Final Judgement, the APSO may now be

entered by the Court.

2.    Defendants have agreed in the APSO that they will abide by the terms of the proposed Final Judgment in the interim and also follow certain procedures described in the APSO between consummation of their merger and the divestitures required by the proposed Final Judgment.  At this time, we ask that the Court only sign the APSO.

3.    The APSO also contains the parties' agreement that, after compliance with the APPA, the Court may enter the proposed Final Judgment.  The APPA requires that Plaintiff publish the proposed Final Judgment and the Competitive Impact Statement in the *Federal Register* and in certain newspapers at least sixty (60) days prior to entry of the proposed Final Judgment.  The notice will inform members of the public that they may submit comments about the proposed Final Judgment to the United States Department of Justice, Antitrust Division (*see* 15 U.S.C. §§ 16(b)-(c)).

4.    During the sixty-day period, Plaintiff will consider, and at the close of that period respond to, any comments that it has received, and it will publish the comments and Plaintiff's responses in the *Federal Register*.

5.    After the expiration of the sixty-day period, Plaintiff will file with the Court the comments and Plaintiff's responses, and Plaintiff either will ask the Court to enter the Final Judgment (subject to any proposed revisions) or will withdraw its consent to entry of the Final Judgment, as provided in Section IV(A) of the Stipulation (*see* 15 U.S.C. § 16(d)).

6.    If Plaintiff requests that the Court enter the proposed Final Judgment after

compliance with the APPA, then the Court may enter the Final Judgment without a hearing,

provided that the Court concludes that the Final Judgment is in the public interest. *See* 15 U.S.C.

§§ 16(e)-(f).

Dated: May 28, 2008                    Respectfully submitted,

                                       FOR PLAINTIFF
                                       UNITED STATES OF AMERICA

                                       Janet J. Brody
                                       Networks and Technology Enforcement Section
                                       United States Department of Justice
                                       Antitrust Division
                                       600 E Street, N.W., Suite 9500
                                       Washington, D.C. 20530
                                       (202) 307-6200

# THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| Plaintiff, ) | CASE NO.: |
| ) | |
| v. ) | JUDGE: |
| ) | |
| CENGAGE LEARNING HOLDINGS I, L.P., ) | |
| CENGAGE LEARNING HOLDINGS II L.P., ) | Case: 1:08-cv-00899 |
| CENGAGE LEARNING, INC., ) | Assigned To : Bates, John D. |
| APAX/TL HOLDINGS, LLC, ) | Assign. Date : 5/28/2008 |
| EDUCATION MEDIA AND PUBLISHING ) | Description: Antitrust |
| GROUP LIMITED, and ) | |
| HOUGHTON MIFFLIN HARCOURT ) | |
| PUBLISHING COMPANY, ) | |
| ) | |
| Defendants. ) | |
| ) | |

## ASSET PRESERVATION STIPULATION AND ORDER

It is hereby stipulated and agreed by and between the undersigned parties, subject to approval and entry by the Court, that:

### I. **Definitions**

As used in this Asset Preservation Stipulation and Order, the terms "Cengage," "Houghton Mifflin," "Divestiture Assets," "Acquirer," and "Acquirers" have the same meaning as defined in the proposed Final Judgment in this action filed herewith and attached as Exhibit A.

### II. **Objectives**

The proposed Final Judgment is meant to ensure Defendants' prompt divestiture of the Divestiture Assets for the purpose of preserving viable competition in the higher education textbook publishing business to remedy the anticompetitive effects that the United States alleges would otherwise result from the acquisition by Cengage of the assets of the Houghton Mifflin

College Division ("HM College") from Houghton Mifflin. This Asset Preservation Stipulation and Order will ensure that until the divestitures required by the proposed Final Judgment have been accomplished, the Divestiture Assets will be preserved, maintained, marketed, and further developed, and continue to be operated as economically viable and ongoing competitive business properties.

### III. Jurisdiction and Venue

This Court has jurisdiction over the subject matter of this action, and Defendants waive all objections to the Court's exercise of personal jurisdiction over Defendants in this action and to the propriety of venue in the United States District Court for the District of Columbia.

### IV. Compliance with and Entry of the Proposed Final Judgment

A.     The parties stipulate that the proposed Final Judgment in the form attached hereto as Exhibit A may be filed with the Court, and that, upon the motion of any party or upon the Court's own motion, it may be entered at any time after compliance with the requirements of the Antitrust Procedures and Penalties Act (15 U.S.C. § 16), without further notice to any party or other proceedings, provided that the United States has not withdrawn its consent, which it may do at any time before the entry of the proposed Final Judgment by serving notice thereof on Defendants and by filing that notice with the Court.

B.     Defendants shall abide by and comply with the provisions of the proposed Final Judgment pending its entry by the Court, or until expiration of time for all appeals of any Court ruling declining entry of the proposed Final Judgment, and shall, from the date of the signing of this Asset Preservation Stipulation and Order by the parties, comply with all the terms and provisions of the proposed Final Judgment as though the same were in full force and effect as an

2

order of the Court.

C.    Defendants shall not consummate the transaction sought to be enjoined by the Complaint herein before the Court has signed this Asset Preservation Stipulation and Order.

D.    This Asset Preservation Stipulation and Order shall apply with equal force and effect to any amended proposed Final Judgment agreed upon in writing by the parties and submitted to the Court.

E.    In the event: (1) the United States has withdrawn its consent, as provided in Section IV.A above, or (2) the proposed Final Judgment is not entered pursuant to this Asset Preservation Stipulation and Order, the time has expired for all appeals of any Court ruling declining entry of the proposed Final Judgment, and the Court has not otherwise ordered continued compliance with the terms and provisions of the proposed Final Judgment, then the parties are released from all further obligations under this Asset Preservation Stipulation and Order, and the making of this Asset Preservation Stipulation and Order shall be without prejudice to any party in this or any other proceeding.

F.    Defendants represent that the divestitures ordered in the proposed Final Judgment can and will be made, and that they will later raise no claim of mistake, hardship or difficulty of compliance as grounds for asking the Court to modify any of the provisions contained therein.

### V. Preservation of the Divestiture Assets

For the duration of the period specified in Section VII:

A.    Defendants shall preserve, maintain, and continue to operate the Divestiture Assets in a manner consistent with this Asset Preservation Stipulation and Order and the proposed Final Judgment.

3

B.    Defendants shall take all steps necessary to:

(1)    Preserve and maintain the value and goodwill of the Divestiture Assets, and continue to operate the Divestiture Assets as economically viable, competitive, and ongoing business properties;

(2)    Maintain and increase the sales and revenues of the Divestiture Asset-related products and services;

(3)    Maintain at 2007 levels, 2008 levels, or previously approved levels for 2009, whichever are higher, all operational, promotional, developmental, advertising, sales, technical, customer-service and marketing funding and other support for the Divestiture Assets;

(4)    Ensure that the Divestiture Assets are fully maintained in operable and saleable condition and continue to be developed and updated; and

(5)    Maintain and adhere to normal sales, development, updating, and support schedules for the Divestiture Assets.

C.    Defendants shall provide sufficient working capital and lines and sources of credit to continue to maintain the Divestiture Assets as economically viable, competitive, and ongoing business properties.

D.    Defendants shall not, except as part of a divestiture approved by the United States in accordance with the proposed Final Judgment, remove, sell, lease, assign, transfer, destroy, pledge, or otherwise dispose of any of the Divestiture Assets.

E.    Prior to the completion of the sale by Houghton Mifflin of the Divestiture Assets to Cengage as part of its sale to Cengage of HM College, Defendants' employees involved in the editorial content, management, or licensing of the Divestiture Assets or the provision or

4

development of seminars or training activities relating to any of the Divestiture Assets, or with

supervisory responsibility or otherwise having substantial involvement in the sale, marketing,

development, design, layout, production, research, operation, delivery, or distribution of the

Divestiture Assets, shall not be terminated or reassigned to other areas within their respective

companies except for transfer bids initiated by employees pursuant to Defendants' regular,

established job posting policies.  Defendants shall provide the United States with ten (10)

calendar days notice of such transfer.  Upon Completion of the sale by Houghton Mifflin of the

Divestiture Assets to Cengage as part of its sale to Cengage of HM College, Defendants'

employees involved in the editorial content, management, or licensing of the Divestiture Assets

or the provision or development of seminars or training activities relating to any of the

Divestiture Assets, or with supervisory responsibility or otherwise having substantial

involvement in the sale, marketing, development, design, layout, production, research, operation,

delivery, or distribution of the Divestiture Assets, shall not be terminated by Defendants and

shall not be reassigned by Cengage to other areas within the company except for transfer bids

initiated by employees pursuant to Cengage's regular, established job posting policies.  Cengage

shall provide the United States with ten (10) calendar days notice of such transfer.

     F.     Defendants shall take no action that would jeopardize, delay, or impede the sale of

the Divestiture Assets to an Acquirer or Acquirers  acceptable to the United States in its sole

discretion.

     G.     Defendants shall provide such support services for the Divestiture Assets as are

required for the Divestiture Assets to operate as economically viable, competitive, and ongoing

business properties.  These services may include federal and state regulatory compliance,

including making all customary filings with federal and state governmental units, human resources, legal, finance, software and computer operations support, administrative, and such other services as are reasonably necessary to operate the Divestiture Assets.

H.    Defendants shall use their best efforts to preserve the existing relationships with each author, licensor, customer, supplier, and other entity or individual having business relations relating to the Divestiture Assets, in accordance with current and past practice.

I.    Defendants shall maintain, in accordance with sound accounting principles, separate, accurate and complete financial ledgers, books and records that report on a periodic basis, such as the last business day of every month, consistent with past practices, the assets, liabilities, expenses, revenues, and income of the Divestiture Assets.

J.    Defendants shall take no action that would interfere with the ability of any trustee appointed pursuant to the proposed Final Judgment to complete the divestitures pursuant to the proposed Final Judgment to an Acquirer or Acquirers acceptable to the United States.

K.    Notwithstanding any other provision of this Asset Preservation Stipulation and Order, Houghton Mifflin's obligations under Sections V.A, V.B, V.C, and V.D shall cease upon completion of its sale of the Divestiture Assets to Cengage as part of its sale to Cengage of HM College.

## VI. Appointment of Compliance Manager

Subject to the approval of the United States, Defendants shall appoint a person or persons to oversee the implementation of Defendants' obligations under the proposed Final Judgment and this Asset Preservation Stipulation and Order.  The appointed person(s) shall be responsible for ensuring Defendants' compliance with Section V of this Asset Preservation Stipulation and

Order, and shall have complete managerial responsibility for the Divestiture Assets, including pricing authority, to direct and implement all steps necessary to ensure Defendants' full compliance with Section V, subject to the provisions of the proposed Final Judgment. In the event any such person is unable to perform his or her duties, Defendants shall appoint, subject to the approval of the United States, a replacement within ten (10) working days. Should Defendants fail to appoint a replacement acceptable to the United States within this time period, the United States shall appoint a replacement. Any person appointed pursuant to this Section shall be compensated by Defendants based on an arrangement that provides a significant incentive for increased sales of Divestiture Asset-related products and services relative to sales during (a) the immediately preceding three-month period and (b) the same period one year earlier.

### VII. Continuation of Asset Preservation Requirements

Defendants' obligations under Sections V and VI of this Asset Preservation Stipulation and Order shall remain in effect until consummation of the Divestitures required by the proposed

Final Judgment or until further order of the Court. If the United States voluntarily dismisses the

Complaint, Defendants' obligations under this Asset Preservation Stipulation and Order shall

cease.

Dated: *MAY 28, 2008*

Respectfully submitted,

FOR PLAINTIFF
UNITED STATES OF AMERICA:

_____
Janet J. Brody, Esq.
U.S. Department of Justice
Antitrust Division
Networks & Technology Enforcement Section
600 E Street, NW, Suite 9500
Washington, D.C. 20530

FOR DEFENDANTS
CENGAGE LEARNING HOLDINGS I,
L.P.; CENGAGE LEARNING HOLDINGS
II L.P.; CENGAGE LEARNING, INC.; and
APAX/TL HOLDINGS, LLC:

_____
Paul Yde, Esq.
Freshfields Bruckhaus Deringer LLP
701 Pennsylvania Avenue, NW, Suite 600
Washington, D.C. 20004

FOR DEFENDANTS
EDUCATION MEDIA AND PUBLISHING
GROUP LIMITED and
HOUGHTON MIFFLIN HARCOURT
PUBLISHING COMPANY:

_____
Debra Pearlstein, Esq.
Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, New York 10153

## ORDER

**IT IS SO ORDERED** by the Court, this _____ day of _____, 2008.


_____
**United States District Judge**

8

## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Plaintiff, | ) | CASE NO.: |
| | ) | |
| v. | ) | JUDGE: |
| | ) | |
| CENGAGE LEARNING HOLDINGS I, L.P., | ) | |
| CENGAGE LEARNING HOLDINGS II L.P., | ) | Case: 1:08-cv-00899 |
| CENGAGE LEARNING, INC., | ) | Assigned To : Bates, John D. |
| APAX/TL HOLDINGS, LLC, | ) | Assign. Date : 5/28/2008 |
| EDUCATION MEDIA AND PUBLISHING | ) | Description: Antitrust |
| GROUP LIMITED, and | ) | |
| HOUGHTON MIFFLIN HARCOURT | ) | |
| PUBLISHING COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## <u>FINAL JUDGMENT</u>

WHEREAS, Plaintiff, United States of America, filed its Complaint on May 28, 2008, and the United States and Defendants, Cengage and Houghton Mifflin, as defined below, by their respective attorneys, have consented to the entry of this Final Judgment without trial or adjudication of any issue of fact or law, and without this Final Judgment constituting any evidence against or admission by any party regarding any issue of fact or law;

AND WHEREAS, Defendants agree to be bound by the provisions of this Final Judgment pending its approval by the Court;

AND WHEREAS, the essence of this Final Judgment is the prompt and certain divestiture of certain rights or assets by the Defendants to assure that competition is not substantially lessened;

AND WHEREAS, the United States requires Defendants to make certain divestitures for

the purpose of remedying the loss of competition alleged in the Complaint;

AND WHEREAS, Defendants have represented to the United States that the divestitures required below can and will be made and that Defendants will later raise no claim of hardship or difficulty as grounds for asking the Court to modify any of the divestiture provisions contained below;

NOW THEREFORE, before any testimony is taken, without trial or adjudication of any issue of fact or law, and upon consent of the parties, it is ORDERED, ADJUDGED AND DECREED:

## I. **Jurisdiction**

This Court has jurisdiction over the subject matter and each of the parties to this action. The Complaint states a claim upon which relief may be granted against Defendants under Section 7 of the Clayton Act, as amended (15 U.S.C. § 18).

## II. **Definitions**

As used in this Final Judgment:

A.      "Cengage" means Defendants Cengage Learning Holdings I, L.P, a limited partnership with its headquarters in Stamford, Connecticut; Cengage Learning Holdings II L.P., a limited partnership with its headquarters in Stamford, Connecticut, which is controlled by Cengage Learning Holdings I, L.P.; Cengage Learning, Inc., a Delaware corporation with its headquarters in Stamford, Connecticut, which is controlled by Cengage Learning Holdings II L.P.; and Apax/TL Holdings, LLC, a Delaware limited liability company that is the general partner in Cengage Learning Holdings I, L.P.; their successors, assigns, subsidiaries, divisions, groups, affiliates, partnerships, joint ventures; and their directors, officers, managers, agents, and

2

employees.

B.    "Houghton Mifflin" means Defendants Education Media and Publishing Group Limited, a Cayman Islands corporation with it headquarters in Dublin, Ireland, and Houghton Mifflin Harcourt Publishing Company, a Massachusetts corporation with its headquarters in Boston, Massachusetts, which is an indirect wholly-owned subsidiary of Education Media and Publishing Group Limited; their successors, assigns, subsidiaries, divisions, groups, affiliates, partnerships, joint ventures; and their directors, officers, managers, agents, and employees.

C.    "Divestiture Assets" means all of the textbooks described in Exhibit A attached hereto and associated ancillary educational materials offered or under development by any of the Defendants for use with any such textbook.  Each textbook include all versions that are customizations of, components of, supplements to, derivations of, volumes that address specific subjects or periods included in the subject matter of, or brief or "essentials" versions of the textbook, but does not include any customized publication sold prior to the filing of the Complaint in this matter that both (i) is not authored or co-authored by any author listed in Exhibit A, and (ii) contains content from an author identified in, or a textbook described in, Exhibit A that comprises less than twenty-five (25) percent of the publisher-provided content (hereafter "Excluded Customized Publications").  The associated ancillary educational materials include all materials in any form or format offered or under development for use with any textbook, including teacher editions or aids, excerpts, workbooks, outlines, summaries, study guides, notebooks, charts, audio, video, software, CD-ROMs, DVD-ROMs, Internet and broadcast components, all other technology components, teacher support and staff development materials, and any other materials.  The associated ancillary educational materials include (i)

3

materials that are or will be offered specifically for use with any textbook listed on Exhibit A; (ii) materials that are or will be offered primarily for use with any such textbook, meaning at least fifty (50) percent of the total units of such materials shipped in the United States during the twelve-month period prior to the filing of the Complaint in this matter were associated with the sale of any such textbook (or for materials still under development, meaning at least fifty (50) percent of the total units of such materials forecast to be shipped in the United States during the twelve-month period following development are forecast to be associated with the sale of any such textbook) (hereafter "Category (ii) Ancillary Materials"); and (iii) a one-year, non-exclusive, royalty-free license to use materials that have been offered during the twelve-month period prior to the filing of the Complaint in this matter for use in association with any of the textbooks described in Exhibit A but are offered primarily for use with other textbooks, meaning at least fifty (50) percent of the units of such materials shipped in the United States during the twelve-month period prior to the filing of the Complaint in this matter were associated with the sale of other textbooks. (The textbooks and associated ancillary educational materials are hereafter collectively referred to as "Divested Textbooks.")

      (1)     The Divestiture Assets include:

           (a)     all tangible assets used in the development, production, servicing, marketing, distribution, and sale of the Divested Textbooks, including, but not limited to, all records relating to historic and current research data and activities and development activities relating to the Divested Textbooks; all original and digital artwork, film plates, and other reproductive materials relating to the Divested Textbooks; all manuscripts, illustrations, any other content, and any revisions or revision plans thereof in print or digital form; all finished

4

inventory; all licenses, permits and authorizations issued by any governmental organization relating to the Divested Textbooks; all contracts, teaming arrangements, agreements, commitments, certifications, and understandings relating to the Divested Textbooks, including, but not limited to, author permissions and agreements, publishing agreements, research agreements, other similar agreements, and supply and distribution agreements; all customer lists, contracts, purchase orders, accounts, and credit records, or similar records of all sales and potential sales of the Divested Textbooks; all sales support and promotional materials, advertising materials, and production, sales and marketing files relating to the Divested Textbooks; at the option of the Acquirer(s), computers and other tangible assets used primarily for the production or distribution of the Divested Textbooks; and all performance and all other records relating to the Divested Textbooks; and

(b)    all intangible assets used in the development, production, servicing, marketing, distribution, and sale of the Divested Textbooks, including, but not limited to, all patents, licenses and sublicenses, intellectual property, copyrights, contract rights, trademarks (registered and unregistered), trade names, service marks, service names, including all titles of existing products comprising or relating to the Divested Textbooks, but only including nonexclusive licenses to use the corporate trademarks or trade names of Cengage or Houghton Mifflin sufficient to allow any Acquirer to sell finished inventory or other materials that have already been marked with such trademarks or trade names; all technical information, computer software and related documentation, know-how, trade secrets, drawings, blueprints, designs, design protocols, specifications for materials, quality assurance and control procedures, and manuals used for any purpose relating to the Divested Textbooks or that Defendants provide

5

to their own employees, customers, suppliers, agents or licensees for use in relation to the

Divested Textbooks; and all other intangible research data concerning historic and current

research and development efforts relating to the Divested Textbooks.

(2)    The Divestiture Assets do not include:

(a)    except to the extent included in the non-exclusive license of

materials described in Section II.C.(1)(b), the company names, company internet domain names,

and company trademarks of Defendants or any of their affiliates, or portions or elements thereof,

including, but not limited to, "Cengage", "South-Western", "Wadsworth", "Brooks Cole",

"Heinle", "Houghton Mifflin", "HM", and "HMCo";

(b)    Defendants' employee records that may not be produced under

applicable law; and

(c)    originals of books or records, as well as the information

management systems used to create and store such books and records, that Defendants are

required by law to retain or that Defendants determine are necessary or advisable to retain,

provided that copies of any such books or records, or datasets that can be accessed by

information management systems, are provided in a form useable by the Acquirer(s), subject to

customary confidentiality assurances, to any Acquirer(s) or potential Acquirer(s).

D.    "Acquirer" or "Acquirers" means the entity or entities to whom Defendants divest

the Divestiture Assets.

### III. Applicability

A.    This Final Judgment applies to Cengage and Houghton Mifflin, as defined above,

and all other persons in active concert or participation with any of them who receive actual notice

of this Final Judgment by personal service or otherwise. Notwithstanding any other provision of this Final Judgment, Houghton Mifflin's obligations under Sections IV.A, IV.H, V.A, V.B, V.D, VI.A shall cease upon completion of its sale of the Divestiture Assets to Cengage as part of its sale to Cengage of the assets of the Houghton Mifflin College Division.

B.      If, prior to complying with Sections IV and V of this Final Judgment, Defendants sell or otherwise dispose of all or substantially all of their assets or of lesser business units that include the Divestiture Assets, they shall require the purchaser to be bound by the provisions of this Final Judgment. Defendants need not obtain such an agreement from the Acquirer(s) of the Divestiture Assets pursuant to this Final Judgment.

## IV. Divestitures

A.      Defendants are ordered and directed, within forty-five (45) calendar days after the filing of the Complaint in this matter, or five (5) calendar days after notice of the entry of this Final Judgment by the Court, whichever is later, to divest the Divestiture Assets in a manner consistent with this Final Judgment to one or more Acquirers acceptable to the United States, in its sole discretion. The United States, in its sole discretion, may agree to one or more extensions of this time period not to exceed thirty (30) calendar days in total, and shall notify the Court in such circumstances. Defendants agree to use their best efforts to divest the Divestiture Assets as expeditiously as possible.

B.      In accomplishing the divestitures ordered by this Final Judgment, Defendants promptly shall make known, by usual and customary means, the availability of the Divestiture Assets. Defendants shall inform any person making inquiry regarding a possible purchase of the Divestiture Assets that they are being divested pursuant to this Final Judgment and provide that

person with a copy of this Final Judgment. Defendants shall offer to furnish to all prospective

Acquirers, subject to customary confidentiality assurances, all information and documents

relating to the Divestiture Assets customarily provided in a due diligence process except such

information or documents subject to the attorney-client privilege or work-product doctrine.

Defendants shall make available such information to the United States at the same time that such

information is made available to any other person.

C.    Defendants shall provide the Acquirer(s) and the United States the identity of any

personnel responsible for any editorial content of any Divestiture Asset, and any personnel

involved in the management, sale, marketing, development, design, layout, production, research,

operation, delivery, distribution, acquisition or maintenance of licenses or other rights to

copyrights or other intellectual property, or provision or development of seminars or training

activities relating to any of the Divestiture Assets, to enable the Acquirer(s) to make offers of

employment. Defendants will not interfere with any negotiations or attempts by the Acquirer(s)

to employ or contract with any of Defendants' officers, directors, employees, or any other

persons responsible for any such activity related to any Divestiture Asset and, if requested, will

release any such person from any non-compete agreement with any of the Defendants.

D.    Defendants shall permit prospective Acquirers of the Divestiture Assets to have

reasonable access to personnel responsible for the Divestiture Assets (as described in Section

IV.C of this Final Judgment); and to have access to any and all financial, operational, or other

documents and information customarily provided as part of a due diligence process.

E.    Defendants shall warrant to all Acquirers of the Divestiture Assets that each asset

is complete, intact, fully functional and operational on the date of sale, provided that, for any

asset that is in development at the time of sale, Defendants shall describe the extent to which the

asset is complete, intact, functional and operational and project the amount of time, money and

effort required to complete the development.  Defendants shall warrant to all Acquirers of the

Divestiture Assets that each asset has been preserved, maintained, developed, sold, and operated

as required by the Asset Preservation Stipulation and Order filed simultaneously with the Court.

 F. Defendants shall not take any action that will impede in any way the permitting,

publication, marketing, sale, development, administration, acquisition or maintenance of related

licenses or other rights to copyrights or other intellectual property, function, operation or

divestiture of the Divestiture Assets.  Defendants shall use their best efforts to facilitate the

assignment to the Acquirer(s) of all of the tangible and intangible assets included in the

Divestiture Assets that Defendants presently hold or use pursuant to a license or any other

agreement.

 G. Defendant Cengage shall have the right to obtain from the Acquirer(s) of the

Divestiture Assets:

 (1) with respect to each Excluded Customized Publication, a one-year, non-

exclusive, royalty-free license to continue to include in that publication Divestiture Asset-related

content;

 (2) with respect to Category (ii) Ancillary Materials, a one-year, non-

exclusive, royalty-free license to continue to sell such materials in association with textbooks that

are not described on Exhibit A where, prior to the filing of the Complaint in this matter, such

materials were sold in association with those textbooks; and

 (3) with respect to copyrighted art, photographs, illustrations, charts, graphs,

9

or other similar content that, at the time of the filing of the Complaint in this matter, were

included within both the Divestiture Assets and other textbooks and products (other than content

written, developed, produced or copyrighted by, or otherwise attributable to, (i) any author

identified in Exhibit A with respect to any course associated with that author in Exhibit A, or (ii)

the author's co-authors or successor authors), a non-exclusive, royalty-free license to continue to

use such content (i) in the other textbooks and products in which it is now included, (ii) in future

textbooks and ancillary educational materials other than textbooks and materials offered for use

in any course listed in Exhibit A, and (iii) with the permission of the Acquirer(s) of all of the

Divested Assets applicable to any course listed in Exhibit A, in future textbooks and ancillary

materials for use in that course.

      H.     Unless the United States otherwise consents in writing, the divestitures pursuant

to Section IV, or by trustee appointed pursuant to Section V, of this Final Judgment, shall include

the entire Divestiture Assets, and shall be accomplished in such a way as to satisfy the United

States, in its sole discretion, that the Divestiture Assets can and will be used by the Acquirer(s) as

part of a viable, ongoing higher education textbook publishing business. Divestiture of the

Divestiture Assets may be made to one or more Acquirers, provided that in each instance it is

demonstrated to the sole satisfaction of the United States that the Divestiture Assets will remain

viable and the divestiture of such assets will remedy the competitive harm alleged in the

Complaint. The divestitures, whether pursuant to Section IV or Section V of this Final

Judgment:

      (1)     shall be made to an Acquirer(s) that, in the United States's sole judgment,

has the intent and capability (including the necessary managerial, operational, technical and

financial capability) of competing effectively in the higher education textbook publishing business; and

(2)     shall be accomplished so as to satisfy the United States, in its sole discretion, that none of the terms of any agreement between an Acquirer(s) and Defendants give Defendants the ability unreasonably to raise the Acquirer's costs, to lower the Acquirer's efficiency, or otherwise to interfere in the ability of the Acquirer to compete effectively.

## V. **Appointment of Trustee**

A.     If Defendants have not divested the Divestiture Assets within the time period specified in Section IV.A of this Final Judgment, Defendants shall notify the United States of that fact in writing. Upon application of the United States, the Court shall appoint a trustee selected by the United States and approved by the Court to effect the divestiture of the Divestiture Assets.

B.     After the appointment of a trustee becomes effective, only the trustee shall have the right to sell the Divestiture Assets. The trustee shall have the power and authority to accomplish the divestiture to an Acquirer(s) acceptable to the United States at such price and on such terms as are then obtainable upon reasonable effort by the trustee, subject to the provisions of Sections IV, V, and VI of this Final Judgment, and shall have such other powers as this Court deems appropriate. Subject to Section V.D of this Final Judgment, the trustee may hire at the cost and expense of Defendants any investment bankers, attorneys, or other agents, who shall be solely accountable to the trustee, reasonably necessary in the trustee's judgment to assist in the divestitures.

C.     Defendants shall not object to a sale by the trustee on any ground other than the

11

trustee's malfeasance. Any such objections by Defendants must be conveyed in writing to the United States and the trustee within ten (10) calendar days after the trustee has provided the notice required under Section VI of this Final Judgment.

D.    The trustee shall serve at the cost and expense of Defendants, on such terms and conditions as the United States approves, and shall account for all monies derived from the sale of the assets sold by the trustee and all costs and expenses so incurred. After approval by the Court of the trustee's accounting, including fees for its services and those of any professionals and agents retained by the trustee, all remaining money shall be paid to Defendants and the trust shall then be terminated. The compensation of the trustee and any professionals and agents retained by the trustee shall be reasonable in light of the value of the Divestiture Assets and based on a fee arrangement providing the trustee with an incentive based on the price and terms of the divestiture and the speed with which it is accomplished, but timeliness is paramount.

E.    Defendants shall use their best efforts to assist the trustee in accomplishing the required divestitures. The trustee and any consultants, accountants, attorneys, and other persons retained by the trustee shall have full and complete access to the personnel, books, records, and facilities of the businesses to be divested, and Defendants shall develop financial and other information relevant to such businesses as the trustee may reasonably request, subject to reasonable protection for trade secret or other confidential research, development, or commercial information. Defendants shall take no action to interfere with or to impede the trustee's accomplishment of the divestitures.

F.    After its appointment, the trustee shall file monthly reports with the United States and the Court setting forth the trustee's efforts to accomplish the divestitures ordered under this

Final Judgment. To the extent such reports contain information that the trustee deems confidential, such reports shall not be filed in the public docket of the Court. Such reports shall include the name, address, and telephone number of each person who, during the preceding month, made an offer to acquire, expressed an interest in acquiring, entered into negotiations to acquire, or was contacted or made an inquiry about acquiring, any interest in the Divestiture Assets, and shall describe in detail each contact with any such person. The trustee shall maintain full records of all efforts made to divest the Divestiture Assets.

      G.     If the trustee has not accomplished the divestitures ordered under this Final Judgment within six (6) months after its appointment, the trustee shall promptly file with the Court a report setting forth: (1) the trustee's efforts to accomplish the required divestitures, (2) the reasons, in the trustee's judgment, why the required divestitures have not been accomplished, and (3) the trustee's recommendations. To the extent such reports contain information that the trustee deems confidential, such reports shall not be filed in the public docket of the Court. The trustee shall at the same time furnish such report to the United States, which shall have the right to make additional recommendations consistent with the purpose of the trust. The Court thereafter shall enter such orders as it shall deem appropriate to carry out the purpose of the Final Judgment, which may, if necessary, include extending the trust and the term of the trustee's appointment by a period requested by the United States.

## VI. **Notice of Proposed Divestitures**

      A.     Within two (2) business days following execution of a definitive divestiture agreement, Defendants or the trustee, whichever is then responsible for effecting the divestitures required herein, shall notify the United States of any proposed divestiture(s) required by Section

IV or V of this Final Judgment. If the trustee is responsible, it shall similarly notify Defendants. The notice shall set forth the details of the proposed divestiture(s) and list the name, address, and telephone number of each person not previously identified who offered or expressed an interest in or desire to acquire any ownership interest in the Divestiture Assets, together with full details of the same.

B.      Within fifteen (15) calendar days of receipt by the United States of such notice, the United States may request from Defendants, the proposed Acquirer(s), any other third party, or the trustee, if applicable, additional information concerning the proposed divestiture(s), the proposed Acquirer(s), and any other potential Acquirer. Defendants and the trustee shall furnish any additional information requested within fifteen (15) calendar days of the receipt of the request, unless the parties shall otherwise agree.

C.      Within thirty (30) calendar days after receipt of the notice or within twenty (20) calendar days after the United States has been provided the additional information requested from Defendants, the proposed Acquirer(s), any third party, and the trustee, whichever is later, the United States shall provide written notice to Defendants and the trustee, if there is one, stating whether or not it objects to the proposed divestiture(s). If the United States provides written notice that it does not object, the divestiture(s) may be consummated, subject only to Defendants' limited right to object to the sale under Section V.C of this Final Judgment. Absent written notice that the United States does not object to the proposed Acquirer or upon objection by the United States, a divestiture proposed under Section IV or Section V of this Final Judgment shall not be consummated. Upon objection by Defendants under Section V.C, a divestiture proposed under Section V shall not be consummated unless approved by the Court.

14

## VII.  <u>Financing</u>

Defendants shall not finance all or any part of any purchase made pursuant to Section IV or Section V of this Final Judgment.

## VIII.  <u>Preservation of Assets</u>

Until the divestitures required by this Final Judgment have been accomplished, Defendants shall take all steps necessary to comply with the Asset Preservation Stipulation and Order entered by this Court.  Defendants shall take no action that would jeopardize the divestitures ordered by this Court.

## IX.  <u>Affidavits</u>

A.      Within twenty (20) calendar days of the filing of the Complaint in this matter, and every thirty (30) calendar days thereafter until the divestitures have been completed under Section IV or Section V of this Final Judgment, Defendants shall deliver to the United States an affidavit as to the fact and manner of its compliance with Section IV or Section V.  Each such affidavit shall include the name, address, and telephone number of each person who, during the preceding thirty (30) calendar days, made an offer to acquire, expressed an interest in acquiring, entered into negotiations to acquire, or was contacted or made an inquiry about acquiring, any interest in the Divestiture Assets, and shall describe in detail each contact with any such person during that period.  Each such affidavit shall also include a description of the efforts Defendants have taken to solicit buyers for the Divestiture Assets, and to provide required information to prospective Acquirers, including the limitations, if any, on such information.  Assuming the information set forth in the affidavit is true and complete, any objection by the United States to information provided by Defendants, including limitations on information, shall be made within

15

fourteen (14) calendar days of receipt of such affidavit.

B.      Within twenty (20) calendar days of the filing of the Complaint in this matter, Defendants shall deliver to the United States an affidavit that describes in reasonable detail all actions Defendants have taken and all steps Defendants have implemented on an ongoing basis to comply with Section VIII of this Final Judgment.  Defendants shall deliver to the United States an affidavit describing any changes to the efforts and actions outlined in Defendants' earlier affidavits filed pursuant to this section within fifteen (15) calendar days after the change is implemented.

C.      Defendants shall keep all records of all efforts made to preserve and divest the Divestiture Assets until one year after such divestitures have been completed.

## X. <u>Compliance Inspection</u>

A.      For the purposes of determining or securing compliance with this Final Judgment, or of determining whether the Final Judgment should be modified or vacated, and subject to any legally recognized privilege, from time to time authorized representatives of the United States Department of Justice, including consultants and other persons retained by the United States, shall, upon written request of an authorized representative of the Assistant Attorney General in charge of the Antitrust Division, and on reasonable notice to Defendants, be permitted:

(1)      access during Defendants' regular office hours to inspect and copy, or at the option of the United States, to require Defendants to provide electronic or hard copies of, all books, ledgers, accounts, records, data, and documents in the possession, custody, or control of Defendants, relating to any matters contained in this Final Judgment; and

(2)      to interview, either informally or on the record, Defendants' officers,

employees, or agents, who may have their individual counsel present, regarding such matters. The interviews shall be subject to the reasonable convenience of the interviewee and without restraint or interference by Defendants.

B.    Upon the written request of an authorized representative of the Assistant Attorney General in charge of the Antitrust Division, Defendants shall submit written reports or responses to written interrogatories, under oath if requested, relating to any of the matters contained in this Final Judgment as may be requested.

C.    No information or documents obtained by the means provided in this section shall be divulged by the United States to any person other than an authorized representative of the executive branch of the United States, except in the course of legal proceedings to which the United States is a party (including grand jury proceedings), or for the purpose of securing compliance with this Final Judgment, or as otherwise required by law.

D.    If at the time information or documents are furnished by Defendants to the United States, Defendants represent and identify in writing the material in any such information or documents to which a claim of protection may be asserted under Rule 26(c)(7) of the Federal Rules of Civil Procedure, and Defendants mark each pertinent page of such material, "Subject to claim of protection under Rule 26(c)(7) of the Federal Rules of Civil Procedure," then the United States shall give Defendants ten (10) calendar days notice prior to divulging such material in any legal proceeding (other than a grand jury proceeding).

## XI.  **No Reacquisition**

Defendant Cengage may not reacquire any part of the Divestiture Assets during the term of this Final Judgment.

17

## XII.  **Retention of Jurisdiction**

This Court retains jurisdiction to enable any party to this Final Judgment to apply to this Court at any time for further orders and directions as may be necessary or appropriate to carry out or construe this Final Judgment, to modify any of its provisions, to enforce compliance, and to punish violations of its provisions.

## XIII.  **Expiration of Final Judgment**

Unless this Court grants an extension, this Final Judgment shall expire ten (10) years from the date of its entry.

## XIV.  **Public Interest Determination**

Entry of this Final Judgment is in the public interest.  The parties have complied with the requirements of the Antitrust Procedures and Penalties Act, 15 U.S.C. § 16, including making copies available to the public of this Final Judgment, the Competitive Impact Statement, and any comments thereon and the United States's responses to comments.  Based upon the record before the Court, which includes the Competitive Impact Statement and any comments and response to comments filed with the Court, entry of this Final Judgment is in the public interest.


Date:  _____

                                         Court approval subject to procedures
                                         of Antitrust Procedures and Penalties
                                         Act, 15 U.S.C. § 16


                                         _____
                                         United States District Judge

**EXHIBIT A**

| Course | Textbooks |
|---|---|
| Business: Introductory | All textbooks that relate to the study of introduction to business with which Louis Boone has been or will be associated, and all textbooks that relate to the study of introduction to business with which David Kurtz has been or will be associated. |
| Foreign Languages and Literature: French: Language: Business French | All textbooks with which Jean-Luc Penfornis has been or will be associated. |
| Foreign Languages and Literature: French: Language: Intermediate | All textbooks that relate to the study of French language or literature at the intermediate level with which Michael Oates has been or will be associated, all textbooks with which Jacques Dubois has been or will be associated, all textbooks with which Simone Renaud has been or will be associated, all textbooks with which Dominique Van Hooff has been or will be associated, all textbooks that relate to the study of French language or literature at the intermediate level with which Jean-Paul Valette has been or will be associated, and all textbooks that relate to the study of French language or literature at the intermediate level with which Rebecca Valette has been or will be associated. |
| Foreign Languages and Literature: German: Language: Grammar | All textbooks with which Kimberly Sparks has been or will be associated, and all textbooks with which Van Horn Vail has been or will be associated. |
| Foreign Languages and Literature: Italian: Language: Elementary | All textbooks with which Marcel Danesi has been or will be associated, and all textbooks with which Suzanne Branciforte has been or will be associated. |
| Foreign Languages and Literature: Italian: Language: Intermediate | All textbooks with which Marcel Danesi has been or will be associated, and all textbooks with which Francesca Italiano has been or will be associated. |

| Course | Textbooks |
|---|---|
| History: Western Civilization Survey: 1500 to Present | All textbooks with which John McKay has been or will be associated. |
| History: Western Civilization Survey: 1750 to Present | All textbooks with which John McKay has been or will be associated. |
| History: Western Civilization Survey: Prehistory to 1715 | All textbooks with which John McKay has been or will be associated. |
| History: Western Civilization Survey: Prehistory to Present | All textbooks with which John McKay has been or will be associated. |
| History: World History Survey: 1400 to 1750 | All textbooks with which John McKay has been or will be associated. |
| History: World History Survey: 1500 to Present | All textbooks with which John McKay has been or will be associated. |
| History: World History Survey: Prehistory to Present | All textbooks with which John McKay has been or will be associated. |
| Interdisciplinary Studies: Orientation to College | All textbooks with which John Gardner has been or will be associated. |