THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) | **FILED** |
| Plaintiff, | ) ) | CASE NO.: |
| v. | ) ) | JUDGE: |
| CENGAGE LEARNING HOLDINGS I, L.P., | ) | |
| CENGAGE LEARNING HOLDINGS II L.P., | ) | |
| CENGAGE LEARNING, INC., | ) | |
| APAX/TL HOLDINGS, LLC, | ) | |
| EDUCATION MEDIA AND PUBLISHING | ) | |
| GROUP LIMITED, and | ) | |
| HOUGHTON MIFFLIN HARCOURT | ) | |
| PUBLISHING COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**FILED**

**SEP 1 9 2008**

Clerk, U.S. District and
Bankruptcy Courts

Case: 1:08-cv-00899
Assigned To : Bates, John D.
Assign. Date : 5/28/2008
Description: Antitrust

## FINAL JUDGMENT

WHEREAS, Plaintiff, United States of America, filed its Complaint on May 28, 2008,

and the United States and Defendants, Cengage and Houghton Mifflin, as defined below, by their

respective attorneys, have consented to the entry of this Final Judgment without trial or

adjudication of any issue of fact or law, and without this Final Judgment constituting any

evidence against or admission by any party regarding any issue of fact or law;

AND WHEREAS, Defendants agree to be bound by the provisions of this Final Judgment

pending its approval by the Court;

AND WHEREAS, the essence of this Final Judgment is the prompt and certain

divestiture of certain rights or assets by the Defendants to assure that competition is not

substantially lessened;

AND WHEREAS, the United States requires Defendants to make certain divestitures for

the purpose of remedying the loss of competition alleged in the Complaint;

AND WHEREAS, Defendants have represented to the United States that the divestitures required below can and will be made and that Defendants will later raise no claim of hardship or difficulty as grounds for asking the Court to modify any of the divestiture provisions contained below;

NOW THEREFORE, before any testimony is taken, without trial or adjudication of any issue of fact or law, and upon consent of the parties, it is ORDERED, ADJUDGED AND DECREED:

## I. Jurisdiction

This Court has jurisdiction over the subject matter and each of the parties to this action. The Complaint states a claim upon which relief may be granted against Defendants under Section 7 of the Clayton Act, as amended (15 U.S.C. § 18).

## II. Definitions

As used in this Final Judgment:

A.     "Cengage" means Defendants Cengage Learning Holdings I, L.P, a limited partnership with its headquarters in Stamford, Connecticut; Cengage Learning Holdings II L.P., a limited partnership with its headquarters in Stamford, Connecticut, which is controlled by Cengage Learning Holdings I, L.P.; Cengage Learning, Inc., a Delaware corporation with its headquarters in Stamford, Connecticut, which is controlled by Cengage Learning Holdings II L.P.; and Apax/TL Holdings, LLC, a Delaware limited liability company that is the general partner in Cengage Learning Holdings I, L.P.; their successors, assigns, subsidiaries, divisions, groups, affiliates, partnerships, joint ventures; and their directors, officers, managers, agents, and

2

employees.

B.    "Houghton Mifflin" means Defendants Education Media and Publishing Group

Limited, a Cayman Islands corporation with it headquarters in Dublin, Ireland, and Houghton

Mifflin Harcourt Publishing Company, a Massachusetts corporation with its headquarters in

Boston, Massachusetts, which is an indirect wholly-owned subsidiary of Education Media and

Publishing Group Limited; their successors, assigns, subsidiaries, divisions, groups, affiliates,

partnerships, joint ventures; and their directors, officers, managers, agents, and employees.

C.    "Divestiture Assets" means all of the textbooks described in Exhibit A attached

hereto and associated ancillary educational materials offered or under development by any of the

Defendants for use with any such textbook.  Each textbook include all versions that are

customizations of, components of, supplements to, derivations of, volumes that address specific

subjects or periods included in the subject matter of, or brief or "essentials" versions of the

textbook, but does not include any customized publication sold prior to the filing of the

Complaint in this matter that both (i) is not authored or co-authored by any author listed in

Exhibit A, and (ii) contains content from an author identified in, or a textbook described in,

Exhibit A that comprises less than twenty-five (25) percent of the publisher-provided content

(hereafter "Excluded Customized Publications").  The associated ancillary educational materials

include all materials in any form or format offered or under development for use with any

textbook, including teacher editions or aids, excerpts, workbooks, outlines, summaries, study

guides, notebooks, charts, audio, video, software, CD-ROMs, DVD-ROMs, Internet and

broadcast components, all other technology components, teacher support and staff development

materials, and any other materials.  The associated ancillary educational materials include (i)

3

materials that are or will be offered specifically for use with any textbook listed on Exhibit A; (ii)

materials that are or will be offered primarily for use with any such textbook, meaning at least

fifty (50) percent of the total units of such materials shipped in the United States during the

twelve-month period prior to the filing of the Complaint in this matter were associated with the

sale of any such textbook (or for materials still under development, meaning at least fifty (50)

percent of the total units of such materials forecast to be shipped in the United States during the

twelve-month period following development are forecast to be associated with the sale of any

such textbook) (hereafter "Category (ii) Ancillary Materials"); and (iii) a one-year, non-

exclusive, royalty-free license to use materials that have been offered during the twelve-month

period prior to the filing of the Complaint in this matter for use in association with any of the

textbooks described in Exhibit A but are offered primarily for use with other textbooks, meaning

at least fifty (50) percent of the units of such materials shipped in the United States during the

twelve-month period prior to the filing of the Complaint in this matter were associated with the

sale of other textbooks.  (The textbooks and associated ancillary educational materials are

hereafter collectively referred to as "Divested Textbooks.")

    (1)    The Divestiture Assets include:

    (a)    all tangible assets used in the development, production, servicing,

marketing, distribution, and sale of the Divested Textbooks, including, but not limited to, all

records relating to historic and current research data and activities and development activities

relating to the Divested Textbooks; all original and digital artwork, film plates, and other

reproductive materials relating to the Divested Textbooks; all manuscripts, illustrations, any

other content, and any revisions or revision plans thereof in print or digital form; all finished

inventory; all licenses, permits and authorizations issued by any governmental organization

relating to the Divested Textbooks; all contracts, teaming arrangements, agreements,

commitments, certifications, and understandings relating to the Divested Textbooks, including,

but not limited to, author permissions and agreements, publishing agreements, research

agreements, other similar agreements, and supply and distribution agreements; all customer lists,

contracts, purchase orders, accounts, and credit records, or similar records of all sales and

potential sales of the Divested Textbooks; all sales support and promotional materials,

advertising materials, and production, sales and marketing files relating to the Divested

Textbooks; at the option of the Acquirer(s), computers and other tangible assets used primarily

for the production or distribution of the Divested Textbooks; and all performance and all other

records relating to the Divested Textbooks; and

        (b)     all intangible assets used in the development, production,

servicing, marketing, distribution, and sale of the Divested Textbooks, including, but not limited

to, all patents, licenses and sublicenses, intellectual property, copyrights, contract rights,

trademarks (registered and unregistered), trade names, service marks, service names, including

all titles of existing products comprising or relating to the Divested Textbooks, but only

including nonexclusive licenses to use the corporate trademarks or trade names of Cengage or

Houghton Mifflin sufficient to allow any Acquirer to sell finished inventory or other materials

that have already been marked with such trademarks or trade names; all technical information,

computer software and related documentation, know-how, trade secrets, drawings, blueprints,

designs, design protocols, specifications for materials, quality assurance and control procedures,

and manuals used for any purpose relating to the Divested Textbooks or that Defendants provide

to their own employees, customers, suppliers, agents or licensees for use in relation to the Divested Textbooks; and all other intangible research data concerning historic and current research and development efforts relating to the Divested Textbooks.

(2)     The Divestiture Assets do not include:

(a)     except to the extent included in the non-exclusive license of materials described in Section II.C.(1)(b), the company names, company internet domain names, and company trademarks of Defendants or any of their affiliates, or portions or elements thereof, including, but not limited to, "Cengage", "South-Western", "Wadsworth", "Brooks Cole", "Heinle", "Houghton Mifflin", "HM", and "HMCo";

(b)     Defendants' employee records that may not be produced under applicable law; and

(c)     originals of books or records, as well as the information management systems used to create and store such books and records, that Defendants are required by law to retain or that Defendants determine are necessary or advisable to retain, provided that copies of any such books or records, or datasets that can be accessed by information management systems, are provided in a form useable by the Acquirer(s), subject to customary confidentiality assurances, to any Acquirer(s) or potential Acquirer(s).

D.     "Acquirer" or "Acquirers" means the entity or entities to whom Defendants divest the Divestiture Assets.

### III. Applicability

A.     This Final Judgment applies to Cengage and Houghton Mifflin, as defined above, and all other persons in active concert or participation with any of them who receive actual notice

6

of this Final Judgment by personal service or otherwise.  Notwithstanding any other provision of this Final Judgment, Houghton Mifflin's obligations under Sections IV.A, IV.H, V.A, V.B, V.D, VI.A shall cease upon completion of its sale of the Divestiture Assets to Cengage as part of its sale to Cengage of the assets of the Houghton Mifflin College Division.

B.      If, prior to complying with Sections IV and V of this Final Judgment, Defendants sell or otherwise dispose of all or substantially all of their assets or of lesser business units that include the Divestiture Assets, they shall require the purchaser to be bound by the provisions of this Final Judgment.  Defendants need not obtain such an agreement from the Acquirer(s) of the Divestiture Assets pursuant to this Final Judgment.

### IV. Divestitures

A.      Defendants are ordered and directed, within forty-five (45) calendar days after the filing of the Complaint in this matter, or five (5) calendar days after notice of the entry of this Final Judgment by the Court, whichever is later, to divest the Divestiture Assets in a manner consistent with this Final Judgment to one or more Acquirers acceptable to the United States, in its sole discretion.  The United States, in its sole discretion, may agree to one or more extensions of this time period not to exceed thirty (30) calendar days in total, and shall notify the Court in such circumstances.  Defendants agree to use their best efforts to divest the Divestiture Assets as expeditiously as possible.

B.      In accomplishing the divestitures ordered by this Final Judgment, Defendants promptly shall make known, by usual and customary means, the availability of the Divestiture Assets.  Defendants shall inform any person making inquiry regarding a possible purchase of the Divestiture Assets that they are being divested pursuant to this Final Judgment and provide that

7

person with a copy of this Final Judgment. Defendants shall offer to furnish to all prospective

Acquirers, subject to customary confidentiality assurances, all information and documents

relating to the Divestiture Assets customarily provided in a due diligence process except such

information or documents subject to the attorney-client privilege or work-product doctrine.

Defendants shall make available such information to the United States at the same time that such

information is made available to any other person.

   C. Defendants shall provide the Acquirer(s) and the United States the identity of any

personnel responsible for any editorial content of any Divestiture Asset, and any personnel

involved in the management, sale, marketing, development, design, layout, production, research,

operation, delivery, distribution, acquisition or maintenance of licenses or other rights to

copyrights or other intellectual property, or provision or development of seminars or training

activities relating to any of the Divestiture Assets, to enable the Acquirer(s) to make offers of

employment. Defendants will not interfere with any negotiations or attempts by the Acquirer(s)

to employ or contract with any of Defendants' officers, directors, employees, or any other

persons responsible for any such activity related to any Divestiture Asset and, if requested, will

release any such person from any non-compete agreement with any of the Defendants.

   D. Defendants shall permit prospective Acquirers of the Divestiture Assets to have

reasonable access to personnel responsible for the Divestiture Assets (as described in Section

IV.C of this Final Judgment); and to have access to any and all financial, operational, or other

documents and information customarily provided as part of a due diligence process.

   E. Defendants shall warrant to all Acquirers of the Divestiture Assets that each asset

is complete, intact, fully functional and operational on the date of sale, provided that, for any

8

asset that is in development at the time of sale, Defendants shall describe the extent to which the asset is complete, intact, functional and operational and project the amount of time, money and effort required to complete the development. Defendants shall warrant to all Acquirers of the Divestiture Assets that each asset has been preserved, maintained, developed, sold, and operated as required by the Asset Preservation Stipulation and Order filed simultaneously with the Court.

F.    Defendants shall not take any action that will impede in any way the permitting, publication, marketing, sale, development, administration, acquisition or maintenance of related licenses or other rights to copyrights or other intellectual property, function, operation or divestiture of the Divestiture Assets. Defendants shall use their best efforts to facilitate the assignment to the Acquirer(s) of all of the tangible and intangible assets included in the Divestiture Assets that Defendants presently hold or use pursuant to a license or any other agreement.

G.    Defendant Cengage shall have the right to obtain from the Acquirer(s) of the Divestiture Assets:

(1)    with respect to each Excluded Customized Publication, a one-year, non-exclusive, royalty-free license to continue to include in that publication Divestiture Asset-related content;

(2)    with respect to Category (ii) Ancillary Materials, a one-year, non-exclusive, royalty-free license to continue to sell such materials in association with textbooks that are not described on Exhibit A where, prior to the filing of the Complaint in this matter, such materials were sold in association with those textbooks; and

(3)    with respect to copyrighted art, photographs, illustrations, charts, graphs,

or other similar content that, at the time of the filing of the Complaint in this matter, were included within both the Divestiture Assets and other textbooks and products (other than content written, developed, produced or copyrighted by, or otherwise attributable to, (i) any author identified in Exhibit A with respect to any course associated with that author in Exhibit A, or (ii) the author's co-authors or successor authors), a non-exclusive, royalty-free license to continue to use such content (i) in the other textbooks and products in which it is now included, (ii) in future textbooks and ancillary educational materials other than textbooks and materials offered for use in any course listed in Exhibit A, and (iii) with the permission of the Acquirer(s) of all of the Divested Assets applicable to any course listed in Exhibit A, in future textbooks and ancillary materials for use in that course.

H.     Unless the United States otherwise consents in writing, the divestitures pursuant to Section IV, or by trustee appointed pursuant to Section V, of this Final Judgment, shall include the entire Divestiture Assets, and shall be accomplished in such a way as to satisfy the United States, in its sole discretion, that the Divestiture Assets can and will be used by the Acquirer(s) as part of a viable, ongoing higher education textbook publishing business.  Divestiture of the Divestiture Assets may be made to one or more Acquirers, provided that in each instance it is demonstrated to the sole satisfaction of the United States that the Divestiture Assets will remain viable and the divestiture of such assets will remedy the competitive harm alleged in the Complaint.  The divestitures, whether pursuant to Section IV or Section V of this Final Judgment:

(1)     shall be made to an Acquirer(s) that, in the United States's sole judgment, has the intent and capability (including the necessary managerial, operational, technical and

10

financial capability) of competing effectively in the higher education textbook publishing business; and

        (2)     shall be accomplished so as to satisfy the United States, in its sole discretion, that none of the terms of any agreement between an Acquirer(s) and Defendants give Defendants the ability unreasonably to raise the Acquirer's costs, to lower the Acquirer's efficiency, or otherwise to interfere in the ability of the Acquirer to compete effectively.

## V. Appointment of Trustee

        A.     If Defendants have not divested the Divestiture Assets within the time period specified in Section IV.A of this Final Judgment, Defendants shall notify the United States of that fact in writing.  Upon application of the United States, the Court shall appoint a trustee selected by the United States and approved by the Court to effect the divestiture of the Divestiture Assets.

        B.     After the appointment of a trustee becomes effective, only the trustee shall have the right to sell the Divestiture Assets.  The trustee shall have the power and authority to accomplish the divestiture to an Acquirer(s) acceptable to the United States at such price and on such terms as are then obtainable upon reasonable effort by the trustee, subject to the provisions of Sections IV, V, and VI of this Final Judgment, and shall have such other powers as this Court deems appropriate.  Subject to Section V.D of this Final Judgment, the trustee may hire at the cost and expense of Defendants any investment bankers, attorneys, or other agents, who shall be solely accountable to the trustee, reasonably necessary in the trustee's judgment to assist in the divestitures.

        C.     Defendants shall not object to a sale by the trustee on any ground other than the

trustee's malfeasance.  Any such objections by Defendants must be conveyed in writing to the

United States and the trustee within ten (10) calendar days after the trustee has provided the

notice required under Section VI of this Final Judgment.

D.    The trustee shall serve at the cost and expense of Defendants, on such terms and

conditions as the United States approves, and shall account for all monies derived from the sale

of the assets sold by the trustee and all costs and expenses so incurred.  After approval by the

Court of the trustee's accounting, including fees for its services and those of any professionals

and agents retained by the trustee, all remaining money shall be paid to Defendants and the trust

shall then be terminated.  The compensation of the trustee and any professionals and agents

retained by the trustee shall be reasonable in light of the value of the Divestiture Assets and

based on a fee arrangement providing the trustee with an incentive based on the price and terms

of the divestiture and the speed with which it is accomplished, but timeliness is paramount.

E.    Defendants shall use their best efforts to assist the trustee in accomplishing the

required divestitures.  The trustee and any consultants, accountants, attorneys, and other persons

retained by the trustee shall have full and complete access to the personnel, books, records, and

facilities of the businesses to be divested, and Defendants shall develop financial and other

information relevant to such businesses as the trustee may reasonably request, subject to

reasonable protection for trade secret or other confidential research, development, or commercial

information.  Defendants shall take no action to interfere with or to impede the trustee's

accomplishment of the divestitures.

F.    After its appointment, the trustee shall file monthly reports with the United States

and the Court setting forth the trustee's efforts to accomplish the divestitures ordered under this

12

Final Judgment. To the extent such reports contain information that the trustee deems confidential, such reports shall not be filed in the public docket of the Court. Such reports shall include the name, address, and telephone number of each person who, during the preceding month, made an offer to acquire, expressed an interest in acquiring, entered into negotiations to acquire, or was contacted or made an inquiry about acquiring, any interest in the Divestiture Assets, and shall describe in detail each contact with any such person. The trustee shall maintain full records of all efforts made to divest the Divestiture Assets.

   G. If the trustee has not accomplished the divestitures ordered under this Final Judgment within six (6) months after its appointment, the trustee shall promptly file with the Court a report setting forth: (1) the trustee's efforts to accomplish the required divestitures, (2) the reasons, in the trustee's judgment, why the required divestitures have not been accomplished, and (3) the trustee's recommendations. To the extent such reports contain information that the trustee deems confidential, such reports shall not be filed in the public docket of the Court. The trustee shall at the same time furnish such report to the United States, which shall have the right to make additional recommendations consistent with the purpose of the trust. The Court thereafter shall enter such orders as it shall deem appropriate to carry out the purpose of the Final Judgment, which may, if necessary, include extending the trust and the term of the trustee's appointment by a period requested by the United States.

## VI. Notice of Proposed Divestitures

   A. Within two (2) business days following execution of a definitive divestiture agreement, Defendants or the trustee, whichever is then responsible for effecting the divestitures required herein, shall notify the United States of any proposed divestiture(s) required by Section

IV or V of this Final Judgment. If the trustee is responsible, it shall similarly notify Defendants. The notice shall set forth the details of the proposed divestiture(s) and list the name, address, and telephone number of each person not previously identified who offered or expressed an interest in or desire to acquire any ownership interest in the Divestiture Assets, together with full details of the same.

B.      Within fifteen (15) calendar days of receipt by the United States of such notice, the United States may request from Defendants, the proposed Acquirer(s), any other third party, or the trustee, if applicable, additional information concerning the proposed divestiture(s), the proposed Acquirer(s), and any other potential Acquirer. Defendants and the trustee shall furnish any additional information requested within fifteen (15) calendar days of the receipt of the request, unless the parties shall otherwise agree.

C.      Within thirty (30) calendar days after receipt of the notice or within twenty (20) calendar days after the United States has been provided the additional information requested from Defendants, the proposed Acquirer(s), any third party, and the trustee, whichever is later, the United States shall provide written notice to Defendants and the trustee, if there is one, stating whether or not it objects to the proposed divestiture(s). If the United States provides written notice that it does not object, the divestiture(s) may be consummated, subject only to Defendants' limited right to object to the sale under Section V.C of this Final Judgment. Absent written notice that the United States does not object to the proposed Acquirer or upon objection by the United States, a divestiture proposed under Section IV or Section V of this Final Judgment shall not be consummated. Upon objection by Defendants under Section V.C, a divestiture proposed under Section V shall not be consummated unless approved by the Court.

14

## VII. Financing

Defendants shall not finance all or any part of any purchase made pursuant to Section IV or Section V of this Final Judgment.

## VIII. Preservation of Assets

Until the divestitures required by this Final Judgment have been accomplished, Defendants shall take all steps necessary to comply with the Asset Preservation Stipulation and Order entered by this Court. Defendants shall take no action that would jeopardize the divestitures ordered by this Court.

## IX. Affidavits

A.      Within twenty (20) calendar days of the filing of the Complaint in this matter, and every thirty (30) calendar days thereafter until the divestitures have been completed under Section IV or Section V of this Final Judgment, Defendants shall deliver to the United States an affidavit as to the fact and manner of its compliance with Section IV or Section V. Each such affidavit shall include the name, address, and telephone number of each person who, during the preceding thirty (30) calendar days, made an offer to acquire, expressed an interest in acquiring, entered into negotiations to acquire, or was contacted or made an inquiry about acquiring, any interest in the Divestiture Assets, and shall describe in detail each contact with any such person during that period. Each such affidavit shall also include a description of the efforts Defendants have taken to solicit buyers for the Divestiture Assets, and to provide required information to prospective Acquirers, including the limitations, if any, on such information. Assuming the information set forth in the affidavit is true and complete, any objection by the United States to information provided by Defendants, including limitations on information, shall be made within

15

fourteen (14) calendar days of receipt of such affidavit.

B.      Within twenty (20) calendar days of the filing of the Complaint in this matter, Defendants shall deliver to the United States an affidavit that describes in reasonable detail all actions Defendants have taken and all steps Defendants have implemented on an ongoing basis to comply with Section VIII of this Final Judgment.  Defendants shall deliver to the United States an affidavit describing any changes to the efforts and actions outlined in Defendants' earlier affidavits filed pursuant to this section within fifteen (15) calendar days after the change is implemented.

C.      Defendants shall keep all records of all efforts made to preserve and divest the Divestiture Assets until one year after such divestitures have been completed.

### X. Compliance Inspection

A.      For the purposes of determining or securing compliance with this Final Judgment, or of determining whether the Final Judgment should be modified or vacated, and subject to any legally recognized privilege, from time to time authorized representatives of the United States Department of Justice, including consultants and other persons retained by the United States, shall, upon written request of an authorized representative of the Assistant Attorney General in charge of the Antitrust Division, and on reasonable notice to Defendants, be permitted:

(1)      access during Defendants' regular office hours to inspect and copy, or at the option of the United States, to require Defendants to provide electronic or hard copies of, all books, ledgers, accounts, records, data, and documents in the possession, custody, or control of Defendants, relating to any matters contained in this Final Judgment; and

(2)      to interview, either informally or on the record, Defendants' officers,

16

employees, or agents, who may have their individual counsel present, regarding such matters. The interviews shall be subject to the reasonable convenience of the interviewee and without restraint or interference by Defendants.

B.      Upon the written request of an authorized representative of the Assistant Attorney General in charge of the Antitrust Division, Defendants shall submit written reports or responses to written interrogatories, under oath if requested, relating to any of the matters contained in this Final Judgment as may be requested.

C.      No information or documents obtained by the means provided in this section shall be divulged by the United States to any person other than an authorized representative of the executive branch of the United States, except in the course of legal proceedings to which the United States is a party (including grand jury proceedings), or for the purpose of securing compliance with this Final Judgment, or as otherwise required by law.

D.      If at the time information or documents are furnished by Defendants to the United States, Defendants represent and identify in writing the material in any such information or documents to which a claim of protection may be asserted under Rule 26(c)(7) of the Federal Rules of Civil Procedure, and Defendants mark each pertinent page of such material, "Subject to claim of protection under Rule 26(c)(7) of the Federal Rules of Civil Procedure," then the United States shall give Defendants ten (10) calendar days notice prior to divulging such material in any legal proceeding (other than a grand jury proceeding).

## XI. <u>No Reacquisition</u>

Defendant Cengage may not reacquire any part of the Divestiture Assets during the term of this Final Judgment.

### XII.  Retention of Jurisdiction

This Court retains jurisdiction to enable any party to this Final Judgment to apply to this

Court at any time for further orders and directions as may be necessary or appropriate to carry out

or construe this Final Judgment, to modify any of its provisions, to enforce compliance, and to

punish violations of its provisions.

### XIII.  Expiration of Final Judgment

Unless this Court grants an extension, this Final Judgment shall expire ten (10) years

from the date of its entry.

### XIV.  Public Interest Determination

Entry of this Final Judgment is in the public interest.  The parties have complied with the

requirements of the Antitrust Procedures and Penalties Act, 15 U.S.C. § 16, including making

copies available to the public of this Final Judgment, the Competitive Impact Statement, and any

comments thereon and the United States's responses to comments.  Based upon the record before

the Court, which includes the Competitive Impact Statement and any comments and response to

comments filed with the Court, entry of this Final Judgment is in the public interest.


Date: September 19, 2008

                                Court approval subject to procedures
                                of Antitrust Procedures and Penalties
                                Act, 15 U.S.C. § 16


                                United States District Judge

18